Peter Strojnik, Esq. – Arizona Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: strojnik@aol.com
*Attorney for Creditors Sabia*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In The Matter of:<br><br>DARREN L. SCOTT and KATHRYN A. SCOTT aka KATHRYN A. RUSSELL,<br><br>Debtors,<br>_____<br>CHRIS SABIA and PAMELA SABIA, husband and wife,<br><br>Plaintiffs,<br>vs.<br><br>DARREN L. SCOTT and KATHRYN A. SCOTT aka KATHRYN A. RUSSELL,<br><br>Defendants.<br>_____ | In Proceedings Under Chapter 7<br><br>NO. 3:13-bk-02829-DPC<br><br>Adversary No. 3:13-ap-00499<br><br>**ADVERSARY COMPLAINT**<br><br>**To Determine Dischargeability - § 11-U.S.C. 523(a)(6)** |

## INTRODUCTORY STATEMENT

This action is brought as a result of the baseless lawsuit filed and prosecuted by Defendants against Plaintiffs in March of 2010 in the Maricopa County Superior Court Cause Number No. CV 2010-050329 styled *Scott v. Sabia* ("Underlying Lawsuit"). The Underlying Lawsuit caused the Sabias extreme financial hardship and caused and/or significantly contributed to Mrs. Sabia's diagnosed multiple sclerosis. The allegations against the Sabias in the Underlying Lawsuit were commenced and prosecuted without probable cause, intentionally and knowingly so, and asserted with the intent of harming Plaintiffs. Therefore, Plaintiffs bring this Complaint to determine dischargeability of and to liquidate Plaintiff's claims against Debtors for (1) abuse of process, (2) aiding and abetting, (3) civil conspiracy and (4) pattern of unlawful activity in violation of statute. Plaintiff's do not currently allege the tort of asserting a wrongful institution of civil proceedings (malicious prosecution), but shall do so when the claim ripens. Plaintiffs bifurcate their ripened and non-ripened claims in order to protect the statute of limitations on ripened claims.

Therefore, Plaintiffs allege:

## GENERAL ALLEGATIONS

1. Plaintiffs are husband and wife residing in Maricopa County.

2. Defendants Darren Lee Scott and Kathryn A. Scott (hereinafter "Defendants Scott" or the "Scott Defendants"), are husband and wife. At times relevant hereto, Defendants

Scott were represented by Michael W. Wright, Esq. of the firm Sherman & Howard LLC, a Maricopa County law firm. Defendants Wright and the firm of Sherman & Howard are jointly referred to as "Lawyers".

3. Defendants Scott have been involved, directly and through their various companies, in more than 30 lawsuits and are professional litigators.

4. At times relevant hereto, Lawyers represented Defendants Scott in the Underlying Lawsuit.

5. At all times relevant hereto, Defendants Scott and Lawyers knew that the salient parts of the allegations against the Plaintiffs in the Underlying Lawsuit were false, fraudulent and perjurious.

6. Defendants Scott and Lawyers agreed amongst themselves to conduct the Underlying Lawsuit in a manner that would inflict harm upon Plaintiffs.

7. During the conduct of the Underlying Lawsuit, Defendants Scott and Lawyers acted as each other's agents, co-conspirators and aiders and abettors.

8. Defendants caused the events to occur in Maricopa County.

### FACTS LEADING UP TO THE FILING OF THE UNDERLYING LAWSUIT

9. In 2005, Plaintiffs Sabia purchased Lot 7 of the Las Ventanas Subdivision ("Subdivision") in Cave Creek, Arizona.

10. In early 2007, Defendants Scott made an offer to purchase Lot 7 from Plaintiffs Sabia.

11. On January 18, 2007, Plaintiffs and Defendants executed a Vacant Land/Lot Purchase Contract.

12. There is a large expanse of land immediately adjacent to the West of Lot 7. The use of the land immediately adjacent to the West of Lot 7 was immaterial to Scotts' decision to purchase Lot 7.

13. At the time of the purchase of Lot 7, the Town of Cave Creek was considering the expansion of its water treatment facilities on Tract C. Tract C is a 5 acre parcel of land at the far NW corner of the Subdivision. The relative positions of Lot 7, the large expanse of land West of Lot 7 and Tract C are reproduced here:



14. At the time of the purchase of Lot 7, Defendants Scott knew that the Town of Cave Creek considered expanding its water treatment facility on Tract C.
15. At the time prior to the close of escrow on Lot 7, Defendants Scott received a Plat Map which disclosed to The Scotts that "tract C may serve as a future town wastewater treatment site".
16. The use of Tract C as a future wastewater treatment site would have no impact on the use, enjoyment or value of Lot 7; indeed, Defendants' fair market expert testified that the fair market value of Lot 7 was $3,000.00 <u>more</u> than the Purchase Price.
17. On January 26, 2007, the Scotts executed the Authorization to Close in which Defendants Scotts admitted that they have "received all documentation as referred to in subject contract/escrow instructions and hereby approve same". This documentation included the Plat Map containing the disclosure of the possible use of Tract C as a future town wastewater treatment site.
18. Following the close of escrow, Defendants Scotts built a speculative house on Lot 7.
19. The Town of Cave Creek eventually built a water treatment plant on the 76 acre parcel just West of Lot 7 and not on Tract C.
20. In 2007 and 2008, the real estate market crashed, and the value of Defendant Scotts' speculative house on Lot 7 plummeted.

21. Sometime prior to March 9, 2010, Defendants Scott retained Lawyers to determine who, if anyone, could be held responsible for the loss of value of the Scotts' speculative house.

22. Defendants Scotts and Lawyers knew that a lawsuit could be filed against the Plaintiffs only if one of the following circumstances were present:

    a. The Plaintiffs breached the Vacant Land/Lot Purchase Contract; or

    b. The Plaintiffs somehow induced the Scotts into purchasing Lot 7 with false information, or with failure to disclose material information, that was not also known to the Scotts.

23. Prior to filing the Underlying Lawsuit, Defendants Scott and Lawyers knew that Plaintiffs Sabia did not breach the Vacant Land/Lot Purchase Contract.

24. Prior to the filing of the Underlying Lawsuit, Defendants Scott and Lawyers also knew that Plaintiffs Sabia did not induce the Scotts into purchasing Lot 7 with false information or with failure to disclose information that was not also known to Defendants Scott.

25. Nonetheless, Defendants Scotts and Lawyers agreed amongst themselves to initiate a lawsuit against the Plaintiffs. Therefore, on March 9, 2010, Defendants Scotts and Defendants Lawyers filed a Verified Complaint against Plaintiffs Sabia. In the Verified Complaint in the Underlying Lawsuit, Defendants falsely claimed that

Plaintiffs Sabia committed the torts and breaches and that they were damaged in the amount of $2 million by the Sabias:

    a. Actual Fraud; and

    b. Fraudulent Concealment; and

    c. Fraud in the Inducement; and

    d. Negligent Misrepresentation; and

    e. Negligence per se; and

    f. Breach of Contract; and

    g. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing).

26. At the time of the agreement to file suit against Sabia, Defendants Scotts and Lawyers knew that the material allegations in their Verified Complaint were false, fraudulent and perjurious.

27. Through the litigation process in the Underlying Lawsuit, Plaintiffs Sabia were able to expose the falsity, the fraud and the perjury of the accusations in the Verified Complaint.

28. Once the falsity, the fraud and the perjury of the accusations in the Verified Complaint became exposed, Defendants Scotts and Lawyers filed their First Amended Verified Complaint on April 6, 2011.

29. Defendants' accusations in the First Amended Verified Complaint in the Underlying Lawsuit changed the story, but the material allegations remained false, fraudulent and

perjurious. In it, Defendants Scott and Lawyers falsely alleged that Sabia's committed:

    a. Actual Fraud; and

    b. Negligent Misrepresentation; and

    c. Breach of Contract; and

    d. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing).

30. In the Underlying Lawsuit, Defendants Scotts committed perjury including, without limitation, all of the following:

    a. False sworn statements in the Verified Complaint relating to Plaintiff's knowledge that the Town of Cave Creek intended to build the water treatment plant on the lot immediately to the West of Lot 7; and

    b. False sworn statement that the information regarding the Town's plans to build the water treatment plant on the lot immediately to the West of Lot 7 was important, or material, to their decision to purchase Lot 7; and

    c. That the Scotts had not been involved in any lawsuits; and

    d. That the Scotts did not know that the Town intended to build the water treatment plant on Tract C.

    e. That the Scotts relied on any statement by Plaintiffs in purchasing Lot 7; and

    f. That the value of Lot 7 was less than the purchase price.

31. Lawyers aided and abetted Defendants Scott, and conspired with Defendants Scott to make these false, fraudulent and perjurious statements.

32. Defendants' conduct was lacking in fundamental honesty and fair play in the general and business life of members of society.

33. A trial to a jury was held in May of 2012. At the completion of the trial, the Jury took one hour and one minute to find in favor of Plaintiffs Sabia on all counts.

## COUNT ONE
(Abuse of Process)

34. Plaintiffs reallege all allegations heretofore set forth.

35. At the time of the filing of the lawsuit against the Plaintiffs, Defendants Scott had become professional litigators having been involved in more than 30 lawsuits either in their personal capacities or through their corporations.

36. Throughout the Underlying Lawsuit, Defendants Scotts and Lawyers engaged in a series of court processes, all flowing one from the other but all distinct and separate.

37. Defendants Scott and Lawyers engaged in definite and specific acts aimed at defrauding the Plaintiffs and the judicial system as more fully described above and below in this Complaint.

38. Defrauding Plaintiffs and the judicial system and intentional infliction of emotional distress are illegitimate objectives in the course of the legal process.

39. Defendants Scott and Lawyers knew that their wrongful conduct could cause a wrongly accused person to become subjected to physical and mental suffering which may include, upon information and belief, the development of multiple sclerosis.

40. In fact, Plaintiff Ms. Sabia developed multiple sclerosis as a direct consequence of Defendants' actions.

41. Lawyers aided and abetted, and conspired with, the Scotts in abusing the process.

42. Defendants Scotts and Lawyers engaged into, inter alia, the process of filing the false, fraudulent and perjurious accusations in the pleadings process, the motions and discovery process, and the trial process.

43. Defendants acted willfully with an ulterior purpose not proper in the regular conduct of the proceedings.

44. The process of filing the false, fraudulent and perjurious accusations in the pleadings process, the motions and discovery process, and the trial process cannot be logically explained without reference to the Scotts and the Lawyers improper and ulterior purposes.

45. The legal process is not designed to satisfy Defendants' ill will toward Plaintiffs.

46. Plaintiffs have been damaged by Defendants' abuse of the process by, inter alia, Plaintiffs' physical pain and physical suffering caused by Ms. Sabia's development of multiple sclerosis. Plaintiffs' damages further include their costs and attorney's fees

incurred in the defense of Defendants' abuse of the process and other damages to be proven at trial, but in no event less than $2,500,000.00.

WHEREFORE, Plaintiffs pray for relief as follows:

A. For a Judgment declaring that Defendants committed acts of abuse of process alleged above; and

B. For a Judgment in the amount of no less than $2,500,000.00 for losses and damages sustained by Plaintiffs under this Count; and

C. For Judgment declaring that Defendants' Scott's acts of abuse of process caused Plaintiffs willful and malicious injury; and

D. For Judgment declaring the damages of $2,500,000.00 non-dischargeable in bankruptcy; and

E. For such other and further relief as the Court may deem just and proper.

## COUNT TWO
(Aiding and Abetting)

47. Plaintiffs reallege all allegations heretofore set forth.

48. Lawyers committed acts of abuse of process as more fully stated above.

49. The acts of abuse of process committed by Lawyers caused injury to Plaintiffs.

50. Defendants Scott knew that Lawyers' actions constituted abuse of process and that such abuse of process would harm Plaintiffs.

51. Defendants Scott willfully and maliciously and substantially assisted and/or encouraged Lawyers in achieving the abuse of process and the resulting harm.

52. Defendants Scott had knowledge of Lawyers' abuse of process.

53. Plaintiffs have been damaged by Defendants Scotts' aiding and abetting by, inter alia, Plaintiffs' physical pain and physical suffering caused by Ms. Sabia's development of multiple sclerosis. Plaintiffs' damages further include their costs and attorney's fees incurred in the defense of Defendants' abuse of the process and other damages to be proven at trial, but in no event less than $2,500,000.00.

WHEREFORE, Plaintiffs pray for relief as follows:

F. For a Judgment declaring that Defendants committed acts of aiding and abetting alleged above; and

G. For a Judgment in the amount of no less than $2,500,000.00 for losses and damages sustained by Plaintiffs under this Count; and

H. For Judgment declaring that Defendants' Scott's acts of aiding and abetting caused Plaintiffs willful and malicious injury; and

I. For Judgment declaring the damages of $2,500,000.00 non-dischargeable in bankruptcy; and

J. For such other and further relief as the Court may deem just and proper.

## COUNT THREE
(Civil Conspiracy)

54. Plaintiffs reallege all allegations heretofore set forth.

55. Defendants Scott and Lawyers agreed to prosecute the Underlying Lawsuit against Plaintiffs Sabia knowing that the civil action against Plaintiffs was not well grounded

in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it was interposed for improper purposes, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

56. Defendants Scott committed malicious and intentional acts of abuse of process, malicious prosecution and aiding and abetting.

57. Defendants Scott agreed to accomplish several malicious and intentional acts that would harm Plaintiffs including, without limitation, the following:

   a. Abuse the process as more fully stated above; and

   b. Inflict emotional and physical distress upon Plaintiffs; and

   c. Assert false claims against Plaintiffs; and

   d. Engage in malicious prosecution against Plaintiffs.

58. Defendants Scott and Lawyers colluded one with the other to bring and prosecute the unjustified Underlying Litigation against Plaintiffs Sabia and, in particular, they colluded to:

   a. File the Verified Complaint knowing that the material allegation in the Verified Complaint were false; and

   b. File the First Amended Verified Complaint knowing that the material allegations in the First Amended Verified Complaint were false; and

c. Perpetuate the falsity of the material allegations in the Verified Complaint and the First Amended Verified Complaint by filing with the Superior Court papers and motions in support of false material allegations in the Verified Complaint and the First Amended Verified Complaint; and

d. Perpetuate the false accusations in the Verified Complaint and the First Amended Verified Complaint by filing with the Superior court papers and motions containing false statements; and

e. Perpetuate the false accusations in the Verified Complaint and the First Amended Verified Complaint by providing false testimony; and

f. File and submit false answers to discovery requests and otherwise fail to disclose their own knowledge that:

　i. The Water Ranch was not approved until 7 months after the sale of Lot 7. See Underlying Lawsuit Trial Exhibit ("TE") 15 (Water Ranch sign) noting the date of the Council Award of August 20, 2007.

　ii. The Plat Map which they had in their possession stated that the Town may build the Water Ranch on Tract C. See TE 3. ("*2. THE SUBDIVIDER SHALL PROVIDE THE TOWN OF CAVE CREEK FREE AND CLEAR TITLE TO THE TRACT C IN CONSIDERATION OF A SUM OF $45,000. THE SUBDIVIDER SHALL GIVE PUBLIC NOTICE TO ALL LOT PURCHASERS*

*THAT TRACT C MAY SERVE AS A FUTURE TOWN WASTEWATER TREATMENT SITE*". (emphasis supplied)

iii. TE 3 (Plat Map) was an exception to coverage which they received prior to close. See Trial Testimony of Darren Scott.

iv. Ms. Scott signed the Authorization to Close dated January 26, 2007, where she admitted receiving "all documentation as referred to in the subject contract/escrow instructions and hereby approve the same".

v. The Subdivision Public Report existed, and further knew the type of information contained in it and how to get a copy of it. (TE 47, 48)

vi. The Subdivision Public Report stated that the water treatment plant could be built on Tract C, and <u>not</u> on the land immediately adjacent to Lot 7. (TE 2)

vii. The contents of the Subdivision Public Report were misstated to Sabia. See Letter to Dunmire (proposed TE Letter Dated May 21, 2010 from Wright to Dunmire)

> Apparently it is your clients' [Sabias'] contention that they did not know about and should not have known about the Town's plan to construct its new wastewater treatment plant on the adjacent land at the time of the sale of Lot 7 to our clients. However, on the sale of Lot 7 by the developer to your clients, your clients received the subdivision public report as required by law and receipted the same. <u>In that subdivision public report there is a specific reference to the Town's future plans to construct its water ranch or wastewater sewer plant on the land immediately to the west of your clients' property.</u> Thus, your clients were put on notice of this adverse event and they chose to hide the fact from the Scotts so as not to jeopardize the sale of Lot 7 to them. (Emphasis supplied)

viii. Mr. Scott admitted on three (3) separate occasions that the Scotts had no evidence to support their allegations against Sabia.

ix. The use of the land "immediately adjacent to the west" of Lot 7 was immaterial in Defendants' Scott decision to purchase Lot 7. See RA 21 in TE 48.

x. Defendants Scott had the responsibility to review the use and potential use of surrounding lands.

xi. Defendants Scott did not rely on anything the Sabias did or did not disclose at the time of the Purchase of Lot 7. See Excerpts of Deposition of Kathryn Scott

xii. At the time of the sale, the fair market value of Lot 7 was $530,000 which is $3,000 <u>more</u> than the purchase price; therefore, Defendants Scott did not suffer any damage in the Underlying Lawsuit. See TE 41.

xiii. Defendants Scott conducted no due diligence required by the terms of the Contract and the SPDS. <u>See</u> TE 48 at RA 6, NUI 11.

xiv. Defendants Scotts acknowledged acceptance of the SPDS without the Subdivision Public Report. <u>See</u> SPDS (TE 9) at Lines 196 – 197.

59. Plaintiffs have been damaged by Defendants' civil conspiracy by, inter alia, causing Plaintiffs' physical and emotional pain and physical and emotional suffering caused by Ms. Sabia's development of multiple sclerosis. Plaintiffs' damages further include their costs and attorney's fees incurred in the defense of Defendants' abuse of

the process and other damages to be proven at trial, but in no event less than $2,500,000.00.

60. Defendants' conduct was motivated by ill will with knowledge their conduct would cause, and did cause, serious and irreversible damages to Plaintiffs. Therefore, in order to deter these Defendants and others similarly situated, Plaintiffs are entitled to an award of attorney's fees in an amount to be proven at the time of the trial, but in no event less than $2,500,000.00.

WHEREFORE, Plaintiffs pray for relief as follows:

A. For a Judgment declaring that Defendants committed acts of civil conspiracy alleged above; and

B. For a Judgment in the amount of no less than $2,500,000.00 for losses and damages sustained by Plaintiffs under this Count; and

C. For Judgment declaring that Defendants' Scott's acts of civil conspiracy caused Plaintiffs willful and malicious injury; and

D. For Judgment declaring the damages of $2,500,000.00 non-dischargeable in bankruptcy; and

E. For such other and further relief as the Court may deem just and proper.

**COUNT FOUR**
(Pattern of Unlawful Activity in Violation of State Statute
A.R.S. 13-2314.04)

61. Plaintiffs reallege all allegations heretofore set forth.

62. Defendants committed acts described in A.R.S. §13-2301(D)(4)(b) including (xv) (asserting false claim) and (xx) (scheme or artifice to defraud). In particular, Defendants asserted the following false claims:

   a. Actual Fraud (Verified Complaint & First Amended Verified Complaint);

   b. Fraudulent Concealment (Verified Complaint);

   c. Fraud in the Inducement (Verified Complaint);

   d. Negligent Misrepresentation (Verified Complaint & First Amended Verified Complaint);

   e. Negligence per se (Verified Complaint);

   f. Breach of Contract (Verified Complaint & First Amended Verified Complaint);

   g. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing) (Verified Complaint & First Amended Verified Complaint);

63. Defendant's acts were committed for financial gain.

64. Defendant's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Defendant enterprise, to wit: Defendants were asserting false claim against Sabias and others in the Underlying Litigation.

65. The assertion of false claims by Defendants with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes, results,

participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics.

66. Plaintiffs sustained a reasonably foreseeable injury to their persons by a pattern of Defendant's unlawful activity.

67. Defendant's misconduct demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time that by their very nature project into the future with a threat of repetition.

68. The last predicate act of racketeering occurred within 5 years of the acts complained of herein.

WHEREFORE, Plaintiffs pray for relief as follows:

A. For a Judgment declaring that Defendants committed acts of Pattern of Unlawful Activity in Violation of State Statute; and

B. For a Judgment in the amount of no less than $2,500,000.00 for losses and damages sustained by Plaintiffs under this Count trebled to $7,500,000.00 under the statute; and

K. For Judgment declaring that Defendants' Scott's acts of Pattern of Unlawful Activity in Violation of State Statute caused Plaintiffs willful and malicious injury; and

L. For Judgment declaring the damages of $2,500,000.00, trebled to $7,500,000.00 non-dischargeable in bankruptcy; and

M. For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 29th day of April, 2013.

**STROJNIK, P.C.**

Peter Strojnik
Attorney for Plaintiffs

The foregoing electronically filed this 29th day of April, 2013, with:

Clerk of the Court
United States Bankruptcy Court
230 N. First Avenue, Suite 101
Phoenix, Arizona 85003

And a copy e-mailed to:

Gregory Malkin, Esq.
Malkin & Associates
2700 N. 3rd Street
Phoenix, Arizona 85004
Attorney for Debtors
*By e-mail only malkinlegalpractices@gmail.com*

/s/